**CMS**
CENTERS for MEDICARE & MEDICAID SERVICES

**SafeGuard Services LLC**

June 30, 2009

Salomon Melgen, M.D.
Vitreo Retina Consultants of the Palm Beaches
2521 Metrocentre Blvd.
West Palm Beach, Florida 33407

NPI #: 1871550996
WMM: 3311292007004
Preliminary Overpayment: 2007- $3,118,821.91
                             2008- $5,862,692.51
                             **Total- $8,981,514.42**

Dear Dr. Melgen:

SafeGuard Services LLC (SGS), is the Zone7-Zone Program Integrity Contractor (ZPIC) chosen by the Centers for Medicare & Medicaid Services (CMS) to perform specific program safeguard functions for the Medicare program. Some of the program safeguard functions are in the following areas: Medical review, cost report audit, data analysis, provider education, fraud detection, and prevention. The ZPIC's responsibilities include reviewing the accuracy and justification of all services reimbursed by the program. ZPIC must ensure that the correct amount has been paid for covered and correctly coded services rendered to eligible beneficiaries by legitimate providers. The purpose of this letter is to describe the steps involved in this audit process and its results, highlight billing discrepancies, and provide educational information to assist with your future claims for Medicare reimbursement.

### Background:

You were selected for post-payment review of the services billed to the Medicare program pursuant to 42 CFR §421.304. The decision to review the claims you submitted to Medicare is based on your pattern of billing for Lucentis™. It was determined that aberrancies may exist regarding your billing of Lucentis™ for which we are authorized to review.

The ZPIC is authorized to request records for a post-payment review of claims pursuant to 42 CFR § 405.980. Good cause has been established because new and material evidence was not available or known at the time of the original determination. This evidence includes the invoices for your purchases of Lucentis™ for 435 patients were requested from you on July 15, 2008. The

A CMS Program Safeguard Contractor, Medicare Integrity Program
Address: 3450 Lakeside Drive Suite 201, Miramar, Florida 33027
Telephone: (954) 433-6423 Fax: (954) 433-6007
www.edssafeguardservices.cms-gov.com

FCSO05851

dates of service for the 435 patients were between February 1, 2007 and December 21, 2007 for which $5,138,601.38 was paid between February 14, 2007 and January 18, 2008. The invoices for your purchase of Lucentis™ for 546 patients were requested from you on January 27, 2009. The dates of service for the 546 patients were between January 2, 2008 and December 23, 2008 for which $5,858,914.11 was paid between January 21, 2008 and January 20, 2009.

We reviewed your claims for the following Healthcare Common Procedure Coding Systems (HCPCS) codes billed for Lucentis™ in 2008:

| Code  | Description                   |
|-------|-------------------------------|
| J2778 | Injection, Ranibizumab, 0.1 mg |
| J3490 | Unclassified drugs            |

Our review indicates that your claims for these codes involves inappropriate administration and billing of the drug.

According to the drug manufacturer labeling specifications, *"Each vial should only be used for the treatment of a single eye. If the contralateral eye requires treatment, a new vial should be used..."* The labeling further states, *"Single-use glass vial designed to provide 0.05 ml of 10 mg/mL solution for intravitreal injection."* The preparation for administration instructions indicate that the entire contents of the vial (.2 ml) are to be withdrawn into a syringe and then the contents are to be expelled until the plunger tip is aligned with the 0.05 mL mark on the syringe. The recommended dosage for each eye is 0.5 mg or 0.05 ml; thus, the quantity billed on the claim should be "5" if the drug is administered according to the recommended dosage.

First Coast Service Options, Inc., (FCSO) the Part B contractor for Florida, established a Local Coverage Determination for Ranibizumab (Lucentis™) which reiterates the dosing and administration instructions outlined in the drug manufacturer labeling.

It is clear, based on the drug manufacturer labeling and the Local Coverage Determination, that a single dose vial of Lucentis™ should be administered to treat a single eye for one patient. Therefore, billing of Lucentis should represent the use of a single vial to treat one eye for one patient only.

The Medicare allowance for the drug is based on the Average Sale Price (ASP) as required by current regulations. The allowance for the drug is approximately $2030 when billed at 0.5 mg. This amount represents payment for the entire single dose vial of Lucentis™. The invoice price for a single dose vial is approximately $1950. According to the Medicare Benefit Policy Manual, Chapter 15, Section 50.3, *"The charge, if any, for the drug or biological must be included in the physician's bill, and the cost of the drug or biological must represent an expense to the physician."* If a vial is used and billed for 3 patients at 0.5 mg per patient, then a physician would be receiving approximately $6180 in reimbursement per vial. The physician is then overstating his expense for the drug when billing in this manner and is, therefore, overpaid.

The Medicare program cannot dictate to physicians how to practice medicine or how to administer services to their patients. However, the program can impose coverage and billing requirements for medical services that are furnished to Medicare recipients for which payment is

expected from Medicare. To bill appropriately for the administration of Lucentis™ as described previously, you should:

- Administer the drug according to the manufacturer specifications. That is, use one vial for one patient only for one eye.

During the review of your claims for the Lucentis™, it was noted that there were a significant number of claims billed compared to the number of invoices. We requested the remaining invoices from you to compare to the claims you billed. Your staff indicated that there were no other invoices and that all of the invoices have already been submitted to SGS as requested. You and your staff explained how each vial is administered for up to 3 patients.

Our review demonstrates that you billed for the administration of Lucentis™ for each of the patients at amounts equal to or slightly greater than the allowance for the drug. Because each vial was used to treat up to three patients and because the billed amount for each patient was equal to or greater than the allowance for the drug at 0.5 mg., your costs for the drug were overstated and you were, therefore, overpaid.

Based on the results of our review, we have determined that you have been overpaid for your claims billed for Lucentis™.

**Overpayment Summary:**

The following references were used as the basis for our review of your claims for Lucentis™:

- LCD for Ranibizumab (Lucentis™) (L26327) – issued by FCSO.
- CMS Publication 100-02, Medicare Benefit Policy Manual, Chapter 15, Section 50.3

To accurately determine your expenses for obtaining Lucentis™ for administration to your patients, we required a comparison of all the invoices associated with the claims you submitted. Our review revealed that you administered the single use vial of Lucentis™ to as many as three patients per vial. Our review also revealed that you did not reduce your billed amount for each patient so that the amount allowed per patient would accurately reflect your cost or expense for obtaining each vial.

Based on our review, we have determined an overpayment amount for each claim and have totaled the claims to identify the overpayment. The enclosed spreadsheet provides a detailed explanation of the services allowed, reduced and denied. The **actual** overpayment determined is

| 2007 | J3490 | $3,118,821.91 |
|---|---|---|
| 2008 | J2778 | $5,862,692.51 |
| Total | | $8,981,514.42 |

The Medicare Administrative Contractor (MAC), FCSO has been notified of this preliminary overpayment. You will receive a demand letter from the MAC regarding the specifics of the overpayment and repayment process. Do not forward payment or appeal this determination until

you have been notified by the Medicare Administrative Contractor as the Medicare Administrative Contractor controls, tracks and completes all appeal requests.

## *DOCUMENTATION REQUIREMENTS:*

Section 1833(e) of the Social Security Act requires the Centers for Medicare & Medicaid Services (CMS) to ensure that "no payment shall be made to any provider of services or other person, unless there has been furnished such information as may be necessary in order to determine the amounts due such provider or other person." This places the burden upon the provider to furnish such information as necessary to determine if payment is (or was) due and the amount of the payment. Therefore, when an audit is conducted, all records related to the care of patients will be requested to substantiate the Medicare claim(s).

Please be aware of the importance of medical documentation, especially in the post-payment review process, as it involves the analysis of data documented in your medical records. These records document your primary treatment in regards to the quantity, quality and continuity of patient care. Moreover, these records are the ZPIC's primary means to determine whether money was paid in accordance with CMS policy.

### Limitation of Waiver of Liability/Without Fault:

Section 1879 of the Social Security Act permits Medicare payments to be made to providers on assigned claims for certain services otherwise not covered, if neither the beneficiary nor the provider knew, or could reasonably be expected to know, that the services were not covered. Services affected are those disallowed as not medically reasonable or necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member. Beneficiaries may not be billed for any overpayment amount that is refunded by offsetting against future Medicare payments payable to you by reason of assignment. Under provisions of Section 1879 of the Social Security Act, beneficiaries are waived of any liability for services, which they did not know (or could not have reasonably been expected to know), would not be allowed and paid by Medicare.

Section 1870 of the Social Security Act permits Medicare to not recover inappropriate payments with respect to an individual deemed without fault in having caused the overpayment. For the "without fault" provision to apply, the individual must have complied with all pertinent regulations and instruction materials. These include Current Procedural Terminology (CPT-4) procedure code definitions and Medicare bulletins. The individual is expected to have had a reason- able basis for assuming the payments received were correct or, if there was reason to question the payment, to promptly bring such a question to the contractor's attention.

In addition, the Medicare provider is expected to have made full and accurate disclosure of material facts. Following are the specific reasons we have determined that you are "with fault" and are liable for the overpayment:

1. The drug manufacturer labeling clearly delineates the administration requirements for a single-use vial of Lucentis™;

2. The LCD established by FCSO, reiterates the drug manufacturer labeling instructions; and
3. The Medicare Benefit Policy Manual, Chapter 15, Section 50.3 states, *"The charge, if any, for the drug or biological must be included in the physician's bill, and the cost of the drug or biological must represent an expense to the physician."*

It is important that the management of any medical practice treating a significant number of Medicare beneficiaries understand the conditions governing which services will be reimbursed under the Medicare Program. Pertinent information was available from the Law and Regulations, from Local Coverage Determinations, from Medicare Bulletins and from your peers in the medical community. Lacking any information that the provider is "without fault"; we have found that Sections 1870 and 1879 of the Social Security Act do not apply and that you are liable for the overpayment.

**Conclusion:**

Please be advised, this letter is intended to be educational in regards to the appropriate submission of Medicare claims. You may be subject to a follow-up review of your billing practice in the future to ensure compliance with the information and recommendations in this letter. Additionally, continuation of identified problems can result in exclusion from the Medicare Program in accordance with Section 1128(b) of the Social Security Act; Civil Monetary Penalties; and/or suspension of Medicare payments under Title 42 of the C.F.R., Section 405.370 et seq.

If you have any questions regarding this notice, please contact Investigator Laurie Tepperberg at 954-433-6449.

Sincerely,

Susan DeCerce
BI Manager
Zone7-Zone Program Integrity Contractor

Enc: Two (2) Password Protected Disks