UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-80049-CR-MARRA/MATTHEWMAN

UNITED STATES OF AMERICA,

v.

SALOMON E. MELGEN,

              Defendant.
_____/

**EMERGENCY MOTION TO REVOKE THE MAGISTRATE JUDGE'S ORDER ALLOWING THE GOVERNMENT TO FILE SUPPLEMENTAL DOCUMENTS AND FOR AN ORDER IMMEDIATELY EXONERATING DR. MELGEN'S BOND**

Dr. Salomon Melgen, by and through his undersigned counsel, and pursuant to Fed. R. Crim. P. 46(g) and SDFL Local Rule 7.1(d), respectfully requests that the Court exonerate all assets pledged for his bond that are not held exclusively in his name.

## INTRODUCTION

During an approximately two hour hearing the Magistrate Judge repeatedly asked the government what legal authority supports the continued restraint of assets that Dr. Melgen's family (not Dr. Melgen himself) posted as part of his bond. The answer was unequivocally clear: There is no authority. The Magistrate Judge recognized as much and said so repeatedly throughout the hearing. Indeed the government failed to cite to a single authority that supported their position. In short, the government's opposition to exonerating Dr. Melgen's bond is frivolous.[1]

---

[1] Had this been a civil action, the government's actions would be subject to sanctions under Fed. R. Civ. P. 11.

Nonetheless, the Magistrate Judge, sua sponte, offered to give the government two more weeks to file supplemental papers in support for their position. He then set a hearing for August 3, 2017, postponing his decision on Dr. Melgen's Motion to Exonerate Bond for 37 days. There is no legal basis for the Court to hold hostage assets that were pledged by third parties solely for the purpose of securing Dr. Melgen's attendance at trial. Giving the government additional time to support an unsupportable proposition further compounds the violation of due process that has already occurred in this matter.

Because every day that goes by is another day that the Melgen family is deprived of their property and due process rights, and because there is currently no further hearing scheduled for over a month, Dr. Melgen has filed this Emergency Motion under SDFL Local Rule 7.1(d).

## **ARGUMENT**

On May 30, 2017 Dr. Melgen filed a Motion for Exoneration of Bond (DE 347). He pointed out that his post-conviction detention fully satisfied the bond's conditions, and thus the bond should be exonerated under Fed. R. Crim. P. 46(g).

The government filed its Response in Opposition to Defendant's Motion for Exoneration of Bond and Motion for Restraint of Assets Pending Sentencing on June 13, 2017. They asserted that under 28 U.S.C. § 2044 the Court had the authority to deny exoneration of the bond and restrain third party assets belonging to Dr. Melgen's family.[2] (DE 354). The government did not argue that the conditions of bond were not satisfied. Rather, it sought to restrain the family's

---

[2] The government also moved to restrain Dr. Melgen's assets under the All Writs Act. The defense concedes that the Court has the power to restrain Dr. Melgen's assets (but not those of his family) pending resolution of the Court's imposition of a restitution order.

2

assets indefinitely on the theory that maybe, at some point in the future, the government could show that the assets really belonged to Dr. Melgen.

Dr. Melgen's June 20, 2017 Reply in Support of His Motion to Exonerate Bond made clear that the government's reliance on 28 U.S.C. § 2044 to restrain third party assets was prohibited, rather than supported, by 28 U.S.C. § 2044. By that statute's own terms, it applies only to "money belonging to and deposited by or on behalf of the defendant . . ." Indeed, the statute expressly that it "shall not apply to any third party surety." See *United States v. Equere*, 916 F. Supp. 450, 452–53 (E.D. Pa. 1996):

> [A]ccording to its plain, logical and practical meaning: [28 USC §1044] applies only to 'money belonging to' the defendant, which has been 'deposited by' the defendant or 'on behalf of the defendant", and does *not* apply to money owned by a third party. There is [also] a disclaimer at the end of the statute which lends further support to this interpretation of the statute. It states, '[t]his section shall not apply to any third party surety', thus reinforcing the notion that money provided by a third party is not within the purview of the statute.

(emphasis added); *United States v. Gonzalez*, No. 11-CR-80211, 2013 WL 654918, at *2 (S.D. Fla. Feb. 21, 2013) ("if the money deposited by [the defendant's family member] does not "belong to" [the defendant], Section 2044 does not apply.").

Dr. Melgen's Reply further noted that if there is any dispute about whether assets pledged by a third party really belong to the defendant – as the government claimed – the burden of proof is on the government. Indeed, *United States v. Gonzalez*, No. 11-CR-80211, 2013 WL 654918, at *2 (S.D. Fla. Feb. 21, 2013) addressed this exact issue. In that case, the prosecution sought a court order under 28 USC §2044 that a $3000 bond posted by the defendant's family be applied to the defendant's restitution debt. The prosecution conceded that 28 USC §2044 was inapplicable to bond money that did not belong to the defendant. But they argued that the

defendant "bears the burden of demonstrating that the monies deposited with the court are not hers." *Id*. at *3. The Court disagreed, explaining that:

> [I]n enacting Section 2044, Congress upended centuries of settled law that required bail monies to be used for the sole purpose of inducing a criminal defendant to comply with the terms of his pretrial release. If it also intended to place the burden of proof on the defendant, it could have easily said so. The fact that it did not suggests that Congress did not intend to shift the burden for reclaiming bail money to the defendant.

*Id*. at *4. Accordingly, the Court found that "the government bears the burden of showing, by a preponderance of the evidence, that the funds in question 'belonged to' [the defendant] and were not deposited by a third party surety." *Id*.

At 8:35 pm on June 26, 2017 (the night before the hearing on Dr. Melgen's Motion to Exonerate Bond), the government filed a Surreply.[3] (DE 364). Like the government's previous filings, their last-minute surreply failed to provide any legal basis or justification to delay exonerating the bond and releasing the third party assets used to secure it. Nor did the government even *attempt* to show that assets pledged by Dr. Melgen's family really belong to him.

On June 27, 2017, Magistrate Judge Hopkins held a hearing on Dr. Melgen's Motion to Exonerate Bond. During almost two hours of argument, the government was unable to point to any legal authority supporting its objection to exonerating the bond. Nor did the government provide any evidence that assets pledged by third parties really belonged to Dr. Melgen.[4] The

---

[3] The Government also styled their filing as a Reply in support of their Motion for Restraint of Assets. They had combined the latter with their Response to Dr. Melgen's Motion to Exonerate Bond. Hence the combined Reply / Surreply.

[4] At the hearing, the government repeatedly asserted that it did not know what assets Dr. Melgen and his family had. This was a patently false misrepresentation made to the Court. Detailed financial statements of all the family members that acted as sureties for Dr. Melgen's bond as well as Dr. Melgen's own financial statement was provided to the government as part of the

Court, in turn, concluded: 1) that the government's objection to exonerating the bond was unsupported by any law cited in the government's papers and was without any legal basis; and 2) would violate the third-party asset holders' due process rights.

The Court however, refused to grant Dr. Melgen's motion to exonerate the bond. Instead, it offered the government a choice: it could either get a ruling from the Court then and there or it could get an additional two weeks to file supplemental papers. Not surprisingly, the government chose the latter. The Court, in turn, rescheduled the matter for further hearing and argument on August 3, 2017. This deprived Dr. Melgen's family of their property for a minimum of 38 additional days and forced them to continue paying the escrow agent – appointed as part of the bond package – to administer their assets.

While the Court was correct in determining that the government's objection to exonerating the bond was without any legal basis and would result in a due process violation, the Court erred in failing to immediately exonerate the bond as required under the law. Fed. R. Crim. P. 46(g) provides that: "The court *must* exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court *must* exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody." Fed R. Crim. P. 46(g) (emphasis added.) Accordingly, once it became clear that there was no legal basis to object to the exoneration of the bond, and that the government did not meet – because it did not even *attempt* to meet – its burden to show that

---

extensive six week long process to get Dr. Melgen's bond. As part of that process, the family members and Dr. Melgen were placed under oath at the bond hearing and extensively examined by the government as to their financial statements. As part of the bond order, the Court appointed an escrow agent, Alan Chase, who has been providing the government with monthly reports detailing all the expenditures made on behalf of the family members. Moreover, the government has had years to investigate the assets belonging to Dr. Melgen and his family.

5

assets pledged by Dr. Melgen's family really belonged to him, the Court was required to exonerate the bond.  *United States v. Hoffman*, 2007 WL 1052435 (S.D.N.Y 2007) (denying request by defendant's former counsel to apply bond money to unpaid legal fees, and finding that because the bond conditions has been satisfied, Fed. R. Crim. P. 46(g) required that the "bond should be exonerated *forthwith.*") (emphasis added).

The government's frivolous opposition to Dr. Melgen's Motion to Exonerate the Bond has already violated his family's due process and property rights.  Moreover, these are assets which the family would like to use in part for Dr. Melgen's legal defense costs and their continued unlawful restraint impairs Dr. Melgen's access those funds in his rapidly approaching sentencing and his trial in New Jersey.  The Court is without authority to compound those violations through further restraint of their assets.

## CONCLUSION

For the reasons set forth above, Dr. Melgen respectfully requests that his Motion for Exoneration of Bond be granted without further delay.

Respectfully submitted,

  /s/Matthew Menchel

Matthew I. Menchel, Bar. No. 12043
KOBRE & KIM LLP
201 South Biscayne Boulevard, 19th Floor
Miami, FL 33131
(305) 967-6108 (tel)
(305) 967-6128 (fax)
Matthew.Menchel@kobrekim.com

Kirk Ogrosky (*pro hac vice*)
Murad Hussain (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5330 (tel)
(202) 942-5999 (fax)

Kirk.Ogrosky@apks.com

Murad.Hussain@apks.com

*Counsel for Defendant Salomon E. Melgen, M.D.*

June 30, 2017

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Southern District of Florida Local Rule 88.9, counsel have conferred in good faith effort to resolve the issues raised in the motion and have been unable to do so.

/s/ Matthew I. Menchel
**KOBRE & KIM LLP**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 30, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for all parties.

/s/ Matthew I. Menchel
**KOBRE & KIM LLP**